UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------------x

KELLY MONCHESKI,                          :
an individual,                            :        CASE NO.:13-6388
                                          :
            Plaintiff,                    :
                                          :        Judge:
                  vs.                     :
                                          :
RCI ENTERTAINMENT OF                      :
LOUISIANA, INC.;                          :
RICK'S CABARET INTERNATIONAL,             :
INC; and                                  :
ABC INSURANCE COMPANY,                    :
                                          :
                                          :
                                          :
                                          :        Magistrate:
            Defendants.                   :

**COLLECTIVE ACTION COMPLAINT AND
REQUEST FOR JURY TRIAL**

NOW INTO COURT, through undersigned counsel, comes plaintiff, **KELLY
MONCHESKI**, a person of the age of majority, who respectfully represents that:

1. **RCI ENTERTAINMENT OF LOUISIANA, INC. D/B/A RICK'S CABARET**
(hereinafter "RCI") a Louisiana corporation domiciled in Orleans Parish, **RICK'S
CABARET INTERNATIONAL, INC.** (hereinafter "INTERNATIONAL"), a Texas
corporation, and **ABC INSURANCE COMPANY**, the insurer of the other named
defendants, are made defendants herein, and are justly and truly indebted to plaintiff and

Page **1** of **22**

a class of similarly situated persons for such monies owed for past unpaid wages,

damages, penalties and attorneys fees as are reasonable in the premises, together with

interest thereon from date of judicial demand until paid, and for all costs of this

proceeding, for the following reasons.


## INTRODUCTION

2.      This is a collective action brought by plaintiff, **KELLY MONCHESKI**, on behalf of

herself and all individuals who worked for **RCI**, and **INTERNATIONAL** (collectively

referred to as "defendants") as exotic dancers during the relevant time period.    This

action is composed of all persons who, during the relevant time period, worked as exotic

dancers for defendants (later referred to as the "Plaintiff Class"). Specifically, plaintiff

alleges that the defendants misclassified plaintiff, and the Plaintiff Class, as "independent

contractors", as opposed to employees, at all times in which they worked as exotic

dancers at an establishment known as Rick's Cabaret ("the Club").    As a result, the

defendants failed to pay plaintiff, and the Plaintiff Class, minimum wage as required

under federal law.    Furthermore, plaintiff alleges that the defendants violated the laws

relative to overtime pay and the collection of tips.      Plaintiff bring this collective action

seeking injunctive relief, damages, backpay, restitution, liquidated damages, civil

penalties, prejudgment interest, and any other relief that the Court deems just and

reasonable under the circumstances.

**JURISDICTION AND VENUE**

3.      Jurisdiction is conferred on this court by 42 U.S.C. § 201, *et. seq.*, and by 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) in that the claim arose in the Eastern District of Louisiana, because the defendants conduct business in the Eastern District of Louisiana and the plaintiff was employed is in the Eastern District of Louisiana.

**PARTIES**

5.      Plaintiff, **KELLY MONCHESKI**, is a person of the age of majority.    At all relevant times plaintiff was a resident of Orleans Parish.    At all relevant times, plaintiff was, but is no longer, an employee of defendants, as defined in 29 U.S.C. § 201 *et seq*, working previously as an exotic dancer at the Club, located at 315 Bourbon Street, New Orleans, Louisiana, from approximately February to August of 2013.

6.      Defendant, **RCI**, is the owner and operator of the Club located at 315 Bourbon Street, New Orleans, Louisiana, whose primary business is featuring exotic dancers who perform semi-nude dances.

7.      The Club, located at 315 Bourbon Street, holds itself out to the public as Rick's Cabaret.

8.      At all relevant times, defendant, **RCI**, was and remains an enterprise engaged in
commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).   Defendant, **RCI**, constitutes an
enterprise within the meaning of 29 U.S.C. § 203(r)(1), because it performs related
activities through common control for a common business purpose.   Furthermore, **RCI**
is considered an "employer" within the meaning of 29 U.S.C. § 203(e)

9.      Upon information and belief, at all relevant times, defendant, **INTERNATIONAL**, is a
corporation which had actual control over **RCI**.   **INTERNATIONAL** has been an
instrumental part of the former and current scheme of how exotic dancers are classified as
independent contractors at the Club.   Furthermore, **INTERNATIONAL** is an employer
within the meaning of 29 U.S.C. § 203(e).

10.     Upon information and belief, defendant **RCI** operates subject to a licensing agreement
with **INTERNATIONAL**.   This licensing agreement gives defendant
**INTERNATIONAL** actual control over defendant **RCI**.

11.     Upon information and belief, at all relevant times defendant **ABC INSURANCE**
**COMPANY** has been an insurer of the other named defendants, and as such is a proper
party pursuant to Louisiana Direct Action Statute.   § 203(e).

12.     The follow facts indicate that **INTERNATIONAL** has actual control over defendant
**RCI**:

- Upon information and belief, the licensing agreement governs how the "Rick's Cabaret" trademarks may be used by **RCI**;

- Upon information and belief, the licensing agreement sets out terms regarding how the Club may operate, how exotic dancers are to be selected, and the hours of operation of the Club;

- Upon information and belief, the licensing agreement sets out terms regarding how the Club may advertise and the representations that the Club may make;

- Upon information and belief, at all relevant times material to this lawsuit, defendants **RCI** were required to operate subject to a policy manual that was provided by defendant **INTERNATIONAL**.

13.     At all times material hereto, plaintiff and the Plaintiff Class have been misclassified as "independent contractors" by defendants, **RCI,** and **INTERNATIONAL.**

14.     At all times material hereto, plaintiff and the Plaintiff Class were employed by defendants, **RCI,** and **INTERNATIONAL**, which were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

**FACTS**

15.     At all times material hereto, plaintiff and each member of the Plaintiff Class, defined below, were employees of defendants, under the Fair Labor Standard Act ("FLSA"). Upon information and belief, during the relevant time period, over 300 different women

have worked as exotic dancers at the Club without being paid any minimum wage.

16. At all relevant times, defendants employed plaintiff and the Plaintiff Class, under the FLSA.   Defendants maintain control over plaintiff and the Plaintiff Class while working at the Club.   Defendants establish the employment policies that applied to plaintiff and the Plaintiff Class while working at the Club.   The defendants benefited financially from the work plaintiff and the Plaintiff Class performed while working at the Club. Additionally, the defendants supervised the plaintiff and the Plaintiff Class.   As employers of the Plaintiff Class, defendants are responsible for compliance with all of the applicable provisions of the FLSA, as provided in 29 C.F.R. § 791.2(a) and (b).

17. At all times materials hereto, the employment terms, conditions and policies that applied to plaintiff were the same as those applied to the other members of the Plaintiff Class.

18. Throughout the relevant time, defendants' policies and procedures regarding the classification of all exotic dancers, including plaintiff, at the Club, were the same.

19. Plaintiff's injuries were caused by the defendants' application of this common policy in the same manner as they were applied to any absent class members.

20. As a matter of common business policy, defendants mis-classified plaintiff and the Plaintiff Class who worked as exotic dancers as "independent contractors," as opposed to

employees.    Defendants' classification of plaintiff and the Plaintiff Class as independent contractors was not due to any unique factor related to their employment or relationship with defendants.    As a result of this classification, plaintiff, and the Plaintiff Class, were not paid the minimum wages required under the FLSA.

21.    At all relevant times, plaintiff and the Plaintiff Class, received no compensation from defendants.    Plaintiff and the Plaintiff Class generated their income solely through the tips received from customers when they performed dances.

22.    Plaintiff and the Plaintiff Class are tipped employees under the FLSA, as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips.    As employees of defendants, Plaintiff and the Plaintiff Class are entitled to: (i) receive minimum wages under the FLSA, and (ii) to retain all tips given to them by customers when they perform dances.

23.    Defendants' misclassification of plaintiff and the Plaintiff Class as independent contractors was designed to deny members of the Plaintiff Class their fundamental rights as employees to receive minimum wages, to retain tips given to them by customers, and was done solely to enhance the defendants' profits.

24.    While working at the Club, members of the Plaintiff Class performed stage dances, private dances, private dances in private rooms, and table dances.

25.    In a private dance performed in dance room, the defendants require that members of the Plaintiff Class collect a cash payment or a "dance voucher" from the patron.    Patrons paying with a credit card prepay the Club for a "dance voucher" and give this voucher to the dancer in addition to a tip.    Defendants dictate the manner and procedure in which tips and dance vouchers are collected from customers and are tracked.

26.    Each time a member of the Plaintiff Class performs a private or table dance for a patron she is immediately required to account to defendants for her time.    Therefore, upon information and belief, the amounts received, along with the identity of the members of the Plaintiff Class, is meticulously recorded by defendants.

27.    At the end of a work shift, the members of the Plaintiff Class are required to sign out, and account to defendants for all dances performed for the patrons of the Club.

28.    The plaintiff and the Plaintiff Class were told to ask for $60 per private dance.    As a matter of common business practice, the defendants require that plaintiff and the Plaintiff Class pay the Club $10 per private dance.    This $10 per-dance charge came from the tips the patrons gives to the dancer for the dance.    This portion of the plaintiff's tips was distributed to the management and/or retained as profits by the defendants.

29.    In addition to the $10 per-dance charge, plaintiff and the members of the Plaintiff Class

were required to pay a "minimum commission" payment to the Club each evening at their

end of their shift.    The "minimum commission" is a percentage of the employee's tips

the employee receives from patrons during stage dances.    The amount of the "minimum

commission" varies each evening and is posted at the cashier window where each

member of the Plaintiff Class checks in at the start of her shift.    The amount an

employee is charged as "minimum commission" varies depending on the time at which

the employee starts her shift.

30.    Additionally, when a patron requests a private dance in a private room the Club charges

the dancer "rent" and requires that the dancer reimburse the Club for the amount of "rent"

that the Club says it is owed.    The amount of "rent" the Club demands from the

employee varies depending on the length of the dance in the private room.

31.    Plaintiff and members of the Plaintiff Class do not exercise the skill and initiative of a

person in business for themselves.

32.    The defendants employ guidelines and rules dictating the way in which a dancer must

conduct herself while working at the Club.    The defendants set the hours of operation,

the show times during which a dancer may perform, the length of time a dancer must

work during a shift, the sequence in which a dancer may perform on stage during her

"stage rotation", the format and themes of performances (including their costumes and

appearances), conduct while at work (i.e., that when not on stage they be on the floor as

much as possible and mingle with patrons), and all other terms and conditions of employment.

33.     Members of the Plaintiff Class are required to dress according to a list of apparel guideline published by the Club.    Members of the Plaintiffs Class must follow the Club's guidelines for personal hygiene and grooming.    Members of the Plaintiffs Class who do not follow the Club's guideline for apparel, hygiene, and grooming are subject to disciplinary actions or termination.

34.     The defendants set all shift times.    The defendants exercise control over when plaintiff and members of the Plaintiff Class start and complete their shift.

35.     Defendants require that plaintiff and the other members of the Plaintiff Class work a minimum number of shifts each week.    Further, members of the Plaintiff Class are required to sign-in and sign-out at the beginning and end of each shift.    Once a shift starts, dancers are required by defendants to complete the shift and cannot leave early. Any dancer that leaves her shift early is subject to disciplinary action.

36.     Plaintiff and the other members of the Plaintiff Class are not required to have any specialized or unusual skills to work at the Club.    Prior dance experience is not required to perform at the Club.    Members of the Plaintiff Class are not required to attain a certain level of skill in order to work at the Club.    The dance skills used are commensurate with those exercised by ordinary people.

37.   Plaintiff and the Plaintiff Class do not have the opportunity to exercise the business skills necessary to elevate their status to that of independence contractors.   Members of the Plaintiff Class own no enterprise.   Members of the Plaintiff Class maintain no separate business structures or facilities.

38.   Plaintiff and the members of the Plaintiff Class do not exert control over a meaningful part of the Club's business and do not stand as separate economic entities from defendants.   Defendants exercise control over all aspects of the working relationship with the Plaintiff Class.

39.   Defendants have complete control over those conditions at the Club over which members of the Plaintiff Class are inextricably linked.   Plaintiff and the other members of the Plaintiff Class are completely dependent on the Club for their earnings.

40.   The Club controls all of the advertising and promotion without which the dancers in the Plaintiff Class could not survive economically.

41.   Defendants create and control the atmosphere and surroundings at the Club, the existence of which dictates the flow of customers into the Club.   Plaintiff and members of the Plaintiff Class have no control over the customer volume or the atmosphere at the Club.

42.   Members of the Plaintiff Class exercise no control over customer volume or atmosphere

at the Club.   Members of the Plaintiff Class do not actively participate in any effort to
increase the Club's client base, enhance goodwill, or establish contracting possibilities.

43.   Plaintiff and the other members of the Plaintiff Class are not permitted to hire or
subcontract other qualified individuals to provide additional dances to patrons, as an
independent contractor in business for themselves would.

44.   Plaintiff and the Plaintiff Class make no capital investment in the facilities, advertising,
maintenance, sound system and lights, food, beverage, and other inventory, or staffing of
the Club.   All investment and risk capital is provided by defendants.

45.   The Club provides all facilities which are used by the Plaintiff Class.   These facilities
include dressing rooms, steam rooms, exercise rooms, stages, elevated pedestals, dance
rooms, private rooms, showers, and restrooms.

46.   Defendants manage all aspects of the business operation, including establishing the hours
of operation, setting the atmosphere, coordinating advertising, hiring and controlling the
staff (managers, waitresses, bartenders, bouncers/doormen, etc.).   Defendants, not the
Plaintiff Class, take the true business risks for the Club.

47.   The Plaintiff Class does not control the key determinants of profit and loss of the Club's
enterprise.   Specifically, the Plaintiff Class is not responsible for any aspect of the

Club's on-going business risk.    Defendants, as opposed to plaintiff or the Plaintiff Class, are responsible for all financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages, and obtaining all appropriate business insurance and licenses.

48.    Plaintiff and members of the Plaintiff Class shoulder no risk of loss.    Defendants, not the dancers, shoulder the risk of loss.    The tips the dancers receive are not a return for risk on capital investment.    They are a gratuity for services rendered. From this perspective, it is clear that a dancer's tips are no different than that of a waiter who serves food during a customer's meal at a restaurant.

49.    Plaintiff worked at the Club from approximately February to August of 2013.    Other members of the Plaintiff Class have, upon information and belief, worked at the Club for longer periods of time.

50.    Exotic dancers, like the members of the Plaintiff Class, are essential to the success of the Club.    The continued success of the Club depends to an appreciable degree upon their provision of stage, tables, and private dances by class members for patrons.    In fact, the primary reason the Club exists is to showcase the dancers' physical attributes for customers.

51.    Upon information and belief, all of the defendants' actions were willful and not the result

of mistake or inadvertence.    Defendants were aware that the FLSA applied to their operation of the Club at all relevant times.    Defendants were aware of other cases and enforcement actions relating to wage and hour violations where the misclassification of exotic dancers as independent contractors, as opposed to employees under the FLSA, was challenged.    In those prior cases, exotic dancers working under conditions similar to those employed at the Club were determined to be employees under the FLSA, as opposed to independent contractors.    Despite being on notice of violations, defendants chose to continue to misclassify the Plaintiff Class and withhold payment of minimum wages to them in effort to enhance their profits. Defendants conspired with one another and any other shareholders of **RCI** to misclassify the Plaintiff Class as independent contractors, as opposed to employees, for their own financial gain.

52.    In the event the defendants' actions were not willful, plaintiff alleges in the alternative that the defendants' actions were negligent.

53.    Plaintiff and all members of the Plaintiff Class have suffered injury, incurred damage, and financial loss as a result of defendants' conduct complained of herein

## CLASS ALLEGATIONS

54.    Plaintiff brings this action individually and as a collective action pursuant to 29 U.S.C. § 216(b).    All requirements of 29 U.S.C. § 216(b) are satisfied.

55.     The opt-in Class to be certified is defined as follows:

> All individuals, who at any time during the relevant period, worked as an exotic
>
> dancer at the Club located at 315 Bourbon Street, New Orleans, Louisiana.
>
> (Referred to as the "Plaintiff Class").

56.     The relevant period dates back three years from the date on which this Complaint was

filed and continues forward through the date of judgment.    In the event the Court finds

that the defendants' actions were not willful, then the relevant time period is two years

from the date on which this Complaint was filed and continues forward through the date

of judgment.

57.     The individuals in the Plaintiff Class are so numerous that joinder of all members is

impracticable.   Although the precise number of such individuals is currently unknown,

plaintiff believes that number of individuals who have worked as exotic dancers at the

Club during the relevant time period but not paid any minimum wages exceeds 300

women.

58.     There are questions of law and fact common to the Plaintiff Class that makes the Plaintiff

Class members similarly situated, including, but not limited to:

a.      whether the defendants violated the FLSA by classifying all exotic dancers as

"independent contractors," as opposed to employees, and not paying them any

minimum wages;

b.      whether the defendants violated the FLSA by failing to pay members of the

Plaintiff's Class overtime pay as set forth and required by the FLSA;

d.      whether the defendants failed to timely pay members of the Plaintiff Class their

tips within the time required by the FLSA;

e.      whether the defendants unlawfully required members of the Plaintiff Class to split

their tips with defendants;

f.      if the defendants violated the FLSA, the amount of damages and other relief

(including all applicable civil penalties, liquidated damages and attorneys' fees)

plaintiff and the Plaintiff Class are entitled to; and

g.      whether the defendants should be permanently enjoined from continuing to

misclassify, and in turn, refuse to pay minimum wages, to the Plaintiff Class.


59.     Plaintiff's claims are typical to those of the Plaintiff Class.    Plaintiff, like other members

of the Plaintiff Class, was misclassified as an independent contractor when she performed

as an exotic dancer and was denied her rights to wages and gratuities under the FLSA.

The misclassification of plaintiff was done pursuant to a common business practice which

affected all class members in a similar way.    Plaintiff challenges defendants' business

practices under legal theories common to all members of the Plaintiff Class.


60.     Plaintiff and the undersigned counsel are adequate representatives of the Plaintiff Class.

Plaintiff is a member of the Plaintiff Class.    Given plaintiff's losses, she has an incentive

to represent the Plaintiff Class and is committed to the prosecution of this action for the benefit of the Plaintiff Class.   Plaintiff has no interests that are antagonistic to those of the Plaintiff Class nor that would cause her to act adversely to the best interests of the Plaintiff Class.   Plaintiff has retained counsel experienced in class action litigation, including wage and hour disputes.

61.   Prosecution of separate actions by individual members of the Plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Plaintiff Class, which would establish incompatible standards of conduct for defendants.

62.   Defendants have acted or refused to act on grounds that apply generally to the Plaintiff Class, so that final injunctive relief or corresponding declaratory relief is appropriate for all members of the Plaintiff Class that choose to opt into the collective action.   The challenged practices are ongoing and defendants continue to refuse to comply with the law.

63.   Questions of law and fact common to the Plaintiff Class predominate over any questions affecting only individual members of the Plaintiff Class.   A collective action is superior to other methods for the fair and equitable adjudication of this action.

## CLAIM FOR RELIEF
## VIOLATION OF THE FLSA

64.    Plaintiff and the members of the Class repeat, reiterate, and reallege each and every allegation hereinabove, as applicable, with the same force and effect as though the same was herein set forth at length.

65.    Defendants failed to pay class members the minimum wages set forth in 29 U.S.C. § 206, or any wages whatsoever.

66.    Defendants failed to pay plaintiff and all other members of the Plaintiff Class minimum wages throughout the relevant time period because they misclassified members of the Plaintiff Class as independent contractors.

67.    Based on the foregoing, plaintiff and all members of the Plaintiff Class are entitled to the full statutory minimum wages set forth in 29 U.S.C. § 206 for all periods in which they worked at the Club.

68.    Additionally, at no time did the defendants inform nor otherwise give statutory notice to plaintiff or other members of the Plaintiff Class of the FLSA's tip credit provisions to its tipped employees.

69.    In the alternative, pursuant to 29 U.S.C. § 203(m), plaintiff and members of the Class are

entitled the lower minimum wage of $2.13 per hour worked for tipped employees, in addition to any tips they received during the relevant time period.

70.     Plaintiff and other members of the Plaintiff Class worked in excess of 40 hours per week; however, defendants have failed to pay Plaintiff and Class members the minimum wages as set forth in 29 U.S.C. § 207.

71.     Defendants failed to pay plaintiff and all other members of the Plaintiff Class overtime wages throughout the relevant time period because they willfully misclassified them as independent contractors.   Furthermore, plaintiff and all other members of the Plaintiff Class who worked as employees were willfully denied their overtime pay by defendants although they worked in excess of forty hours per week.

72.     Defendants required plaintiff and the members of the Plaintiff Class to share their tips with defendants.   Specifically, defendants required plaintiff and members of the Plaintiff Class to pay them "minimum commission" of the tips given to them by patrons in relation to dances they performed.   The tips split with defendants were recorded by defendants on statements and/or other documents.

73.     Under the FLSA, tipped employees are entitled to retain all the tips received from patrons except those tips included in a tipping pool among employees who customarily receive tips.

74.   Defendants' requirement that plaintiff and the Plaintiff Class split their tips with defendants were not part of a valid tip pooling or sharing agreement.   The amounts class members paid defendants from their tips were not shared with co-employees who customarily receive tips.   Rather, the minimum commission collected from the Plaintiff Class when they clocked out was retained in their entirety by defendants.

75.   Defendants failed to furnish plaintiff and the members of the Plaintiff Class comprehensive statements showing the hours that they worked and the wages they received during any pay period in the relevant time period as required by FLSU and the promulgated regulations.

76.   Based on the foregoing, plaintiff seeks on behalf of herself, and all members of the Plaintiff Class, unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period, overtime wages at the required legal rate, liquidated damages, prejudgment interest, attorney's fees and costs and all other costs and penalties allowed by law.   In addition to other relief due, all tips which members of the Plaintiff Class split with defendants should be refunded to the Plaintiff Class along with prejudgment interest.   Further, plaintiff seeks injunctive relief to compel defendants to recognize Plaintiff Class members' employee status, to provide all payments guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

WHEREFORE, PLAINTIFF, **KELLY MONCHESKI**, PRAYS THAT:

I.      Defendants be duly cited to appear and answer this petition and they be served with a copy thereof.

II.     After due proceedings had and the lapse of all legal delays, there be judgment herein in favor of plaintiff, **KELLY MONCHESKI**, and the Plaintiff Class against the defendants, **RCI ENTERTAINMENT OF LOUISIANA, INC. D/B/A RICK'S CABARET**, **RICK'S CABARET INTERNATIONAL, INC.**, and **ABC INSURANCE COMPANY**, individually and *in solido*, for such damages, back pay, liquidated damages, civil penalties, and attorneys' fees, as are reasonable in the premises, together with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings.

III.    Enjoins defendants, their agents, employees and successors, and all other persons in active concert or participation with them, from:

        (a)    classifying members of the Plaintiff Class as independent contractors instead of as employees;

        (b)    failing to pay members of the Plaintiff Class minimum wage as required under the FLSA;

        (c)    failing to pay members of the Plaintiff Class overtime wages as required under the FLSA;

(d)      failing to inform or otherwise give statutory notice to the Plaintiff Class of the FLSA's tip credit provisions;

(e)      requiring the Plaintiff Class to pay a minimum commission of the tips they receive to the defendants; and

(f)      failing to provide the Plaintiff Class with comprehensive statements showing the hours that they worked and the wages they received.

IV.    PLAINTIFF FURTHER PRAYS for all orders and decrees necessary in the premises, and for all full, general and equitable relief to which she and her class members are entitled.

New Orleans, Louisiana this __ day of November, 2013.

Respectfully submitted,

_ s/Alexandra E. Mora_____
Alexandra E. Mora (#23535)
Walter Wolf (#21953)

Law Office of Alexandra Mora
322 Lafayette Street
New Orleans, LA 70130
(504) 566 0233
Fax: (504) 566 8997